No. 24-12274

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

V.

ALFRED DAVIS,

*Defendant/ Appellant.*

On Appeal from the United States District Court
for the Southern District of Florida

APPELLANT'S MOTION FOR RELEASE

Zeljka Bozanic, Esq.
Attorney for Appellant Alfred Davis
17100 Royal Palm Blvd., Suite 1
Weston, Florida, 33326
Tel. (954) 920-9750

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

**United States v. Alfred Davis**
**Case Nos. 24-12274**

Appellant files this 11th Cir. R. 26.1 Certificate of Interested Persons:

Bailyn, Jonathan

Bozanic, Zeljka

Davis, Alfred Lenoris

Dominguez, Humberto

Galler, Brandy

Hyman, Mitchell Evan

Lacosta, Anthony W.

Lapointe, Markenzy

Lesperance, Rod

Martinez, Hon. Jose E.

Matzkin, Daniel

Sadlo, Katie L.

*/s/ Zeljka Bozanic*
Zeljka Bozanic, Esq.

# MOTION FOR RELEASE

Appellant Alfred Davis, by undersigned counsel, pursuant to Federal Rule of Appellate Procedure 9(b), hereby moves this Court to order his release pending resolution of the present appeal, and states:

1. Undersigned counsel has communicated regarding the present motion with AUSA Brandy Galler, counsel for Appellee, who indicates that the government opposes the instant motion.

2. "A defendant seeking release on bond pending the pendency of his appeal must show that: (1) he is not likely to flee if release, (2) he is not likely to pose a danger to the community if released; and (3) his appeal raises a substantial question of law or fact likely to result in reversal or an order for a new trial." *United States v. Lamar*, 820 Fed. Appx. 996, 997 (11th Cir. 2020) (unpublished) (citing 18 U.S.C. § 3143(b) and *United States v. Giancola*, 754 F.2d 898, 899-901 (11th Cir. 1985)).

### A. If released, Mr. Davis is not likely to flee, and is not likely to pose a danger to the community.

After his January 24, 2024 initial appearance in this case on a single-count indictment for access-device fraud, in violation of 18 U.S.C. § 1029(a)(1), Mr. Davis was released on bond. DE72:4. The government did not oppose Mr. Davis' release on bond. Mr. Davis thereafter "remain[ed] in compliance with his Court-ordered

special conditions while on pretrial services supervision." Presentence Investigation Report ("PSI") ¶ 3. After his May 15, 2024 conviction on the single count charged in the indictment, the district court denied the government's request to remand Mr. Davis into custody, and permitted him to remain on bond under the same conditions, until the July 11, 2024 sentencing. DE62:64. Mr. Davis complied with his conditions of release. PSI ¶ 3. The record thus demonstrates that Mr. Davis, if released on bond, is not likely to flee, nor pose a danger to the community. Furthermore, the defendant's sentence of eight months is relatively short.

In the district court, the government opposed Mr. Davis' motion for bond. DE74. Puzzlingly, the government's opposition failed to address his record of compliance with conditions of release. Instead, the government claimed that Davis posed a risk of flight because no member of Mr. Davis' family "spoke at the Defendant's sentencing or even wrote a character letter." But, if a meaningful correlation exists between a defendant's likelihood of flight, or danger to the community, and family and community support in regard to sentencing, the record supports Mr. Davis' position. Prior to sentencing, the defendant submitted (strong) character letters from eleven persons, including his nephew, DE66-1:6; the mother of an ex-girlfriend, DE66-1:8; a friend who has known Mr. Davis for 20 years and who referred to Mr. Davis as his "brother," DE66-1:10; and eight additional friends. DE61-1:2-5, 7, 9 and 11. The individuals who submitted character letters were not

allowed to speak in Court on behalf of Mr. Davis. On July 10, 2024, the undersigned received an email from Chambers of The Honorable Judge Martinez stating "In order to keep the hearing as expeditious as possible and to avoid "double dipping," at Alfred Lenoris Davis' Sentencing Hearing (currently scheduled for Thursday, July 11, 2024, at 11:00 a.m.), anybody who has filed Character Letters will not be allowed to have an in-person testimonial, and vice-versa."

The district court's order denying Mr. Davis' motion for bond pending appeal found that Mr. Davis was a flight risk, and a danger to the community, as follows:

> As the Government summarizes in its Response, Defendant's "only stable relationship is to a woman convicted of fraud and awaiting sentencing; he claims to be the owner of a business that does not exist and which he acquired by fraud and identity theft; he claims to be a homeowner but used the home to commit mortgage fraud; he claims leadership of a ministry that is a well-known public menace; and he claims to be in debt but has access to undisclosed sums of money."

DE77:1. The district court erred in adopting the government's views.

First, Mr. Davis's relationship with "a woman convicted of fraud" refers to Davis' relationship with his girlfriend Elaine Escoe, which, as the government acknowledged, has existed for "over four years." DE74:2. Thus, this relationship predated his initial appearance in this case, on January 24, 2024, when the government stipulated to his release on bond pending trial. DE6: DE7. If all persons had to spend time incarcerated on account of a poor choice of romantic partner, our

jails could quickly get quite crowded. As noted above, Mr. Davis complied with his conditions of release throughout the proceedings below. Nothing about his relationship with Ms. Escoe indicates that he would now become noncompliant.

The reference to Mr. Davis' relationship with "a business that does not exist and which he acquired by fraud and identity theft" refers to his relationship with Blackfire Transport. DE74:2. But, again, Mr. Davis' relationship with Blackfire Transport dates back to 2017, PSI ¶ 67, and his checks to BlackFire Transport occurred in 2023. PSI ¶¶ 7, 10, 16. Throughout his relationship with Blackfire Transport, Davis complied with his conditions of release on bond. Nothing suggests that he would now become noncompliant.

The claim that Mr. Davis "used [a] home to commit mortgage fraud," DE77:1, DE74:3 (citing PSI ¶ 37) refers to conduct in 2008, that gave rise to a 2010 conviction for grand theft. PSI ¶ 37. Thus, the conduct on which the district court relied occurred sixteen (16) years before the present 2024 offense of conviction. Notwithstanding this 2008 misconduct, the district court permitted Mr. Davis to be out on bond throughout the proceedings in the present case. Mr. Davis complied with the conditions of release. PSI ¶ 3. This 2008 conduct was an unsound basis to deny his motion for bond pending resolution the present appeal.

The district court faulted Mr. Davis for "claim[ing] leadership of a ministry [Boss Group Ministries] that is a well-known public menace." DE77:1. But the only

information the government provided that appears to relate to Boss Group Ministries consisted of two news articles regarding violence at a location called "Boss Mansion" (the articles make no mention of Boss Group Ministries) DE74-4; DE74-5. *Neither article mentions Mr. Davis*. One article dates back to April 17, 2022. DE74:-5. The other article is dated July 7, 2024, DE74:4, during the period between trial and sentencing in this case, when Mr. Davis was in compliance with his conditions of release. In short, neither news article is a basis for denying Mr. Davis bond while the present appeal is pending.

Finally, the district court found that Mr. Davis "claims to be in debt but has access to undisclosed sums of money." DE77:1. But the bank documents which the government attached to its opposition all date from July 2023. DE74-6; DE74-7; DE74-8. Again, these bank account predate the period, from January 24, 2024 to July 11, 2024, when Mr. Davis was out on bond, and compliant with his conditions of release. Moreover, these bank documents, standing alone, without more, are not proof of anything. The bank documents clearly fall far short of establishing, as the government puts it, "serial fraud." DE74:4.

In sum, Mr. Davis complied with his conditions of release from his initial appearance on January 24, 2024 until his sentencing on July 11, 2024. His sentence of eight months is relatively short. There is no countervailing evidence of risk of flight, or danger to the community.

### B. Mr. Davis' appeal will raise a substantial question of law.

In the trial court, the government convicted Mr. Davis of access-device fraud in violation of 18 U.S.C. § 1029(a)(1), based on the fact that he used a fake driver's license to rent an apartment at 400 Sunny Isles. In closing argument, the prosecutor urged the jury to convict Mr. Davis because "he lied about his identity when he used that fake driver's license . . . to pass a background check and trick 400 Sunny Isles into allowing him to live there and gain access to all of the amenities that that beautiful luxury condominium had to offer." DE62:11-12

On appeal, Mr. Davis will challenge his conviction on the ground (among other grounds)[1] that, as Mr. Davis stated in his motion for judgment of acquittal, "[t]he government failed to establish that the defendant intended to take money or property from the victim." DE55:2.

In its one-page order denying Mr. Davis' motion for bond while on appeal, the district court stated that "the appeal does not raise a substantial question of law or fact likely to result in reversal." DE77:1. The district court did not add any analysis. Its ruling was incorrect. Indeed, it was inconsistent with the district court's own assessment, in response to the government's request for the defendant to be immediately remanded upon conviction, that Mr. Davis should stay out on bond

---

[1] In the district court, the defense objected to the failure to identify him as the person who attempted to rent an apartment at 400 Sunny Isles, and to the admission of two prior convictions.

pending sentencing, because, in light of Mr. Davis' then-pending motion for a judgment of acquittal, "there's enough [of an] issue in this case."

From the outset, Mr. Davis made clear that the government's case suffered from a fatal defect: the government claimed that Mr. Davis used a fake driver's license to rent an apartment, but there was no evidence that he used the fake driver's license to obtain money or property from anyone. Mr. Davis' portion of the proposed joint jury instructions, filed before trial, asked the judge to instruct the jury that, to find that a person acts with intent to defraud, it had to find that the person had "the intent to deprive the victim of money or property through deception." DE26:29 (citing *United States v. Saini*, 23 F.4th 1155 (9th Cir. 2022). During the trial, the government opposed this giving this instruction, claiming that the law did not require proof of "intent to deceive and the purpose of causing financial loss or receiving financial gain," but merely proof of "intent to deceive or cheat." DE61:145. The government argued:

> In this case, there was an intent to defraud, . . . to provide a false identity to gain access to something [an apartment at 400 Sunny Isles] that the defendant was not entitled to. That's the definition of defraud. *The defendant gained access to a place that he was not entitled to be in*. That's access device fraud.

DE61:146 (emphasis added). This broad theory of what constitutes access device fraud is not supported by precedent.

In his post-trial motion for judgment of acquittal, Mr. Davis argued that "here,

the government had to prove that Mr. Davis *intended* to defraud, and *actually used* a counterfeit driver's license, to 'obtain money, goods, services, or any other thing of value.'" DE55:3 (citing 18 U.S.C. §§ 1029(a)(1) & (e)(1)).  Mr. Davis pointed out that the government failed to prove this, pointing out, in opening and closing argument, that the government "conceded that there was no evidence that Mr. Davis failed to pay his rent."  DE55:4 ("there was *no financial loss* to the owner of the unit.") (emphasis in original).  Tellingly, the PSI subsequently noted that the government did not provide any victim information in this case.

Mr. Davis noted the government's theory that a person could be guilty of access-device fraud simply because he "could use the building's amenities," and argued that such evidence was insufficient, stating: "Under the government's 'use of amenities' theory . . . an under-age teenager who uses a counterfeit driver's license to get access to a trendy South Beach night club, and paid the entrance fee, would be committing a federal offense, punishable by up to 20 years in prison."  DE55:4. This concern was well-founded.  Here, the prosecution's theory in closing argument was that the statute did not require "that there be a financial loss," because it defines an "access device" as something that obtains "a thing of value," and, the prosecution claimed, "access to a luxury building is a thing of value."  DE62:42. To an under-age teenager, access to a South Beach night club is, no doubt, a "thing of value."  But stretching a felony offense to make a "thing of value" include access to a luxury

building, or to a trendy nightclub, would strain § 1029(a)(1) far beyond its intended scope. *Cf. Bond v. United States*, 572 U.S. 844, 855 (2014) (statute criminalizing use of chemical weapons did not reach conduct of spreading chemical substance outside a romantic rival's home). To give the term "thing of value" meaning in the context of a sentence that refers to "money, goods, [and] services" and to a "transfer of funds," and in the context of a criminal law that requires a felonious "intent to defraud," the term "thing of value" must be interpreted to require proof of an actual monetary loss or a personal financial gain. *See* 18 U.S.C. §§ 1029(e) & (a)(1).

Mr. Davis noted that the government's evidence merely showed that Mr. Davis had an opportunity to use the building's amenities, and pointed out that the caselaw makes clear that such evidence is insufficient to establish a § 1029(a)(1) violation. Mr. Davis cited this Court's *dicta* in *United States v. Morris*, 81 F.3d 131, 134 (11th Cir. 1996) that the statute did not reach "free riding on a cellular phone system." DE55:4-5. Mr. Davis cited *United States v. McNutt*, which held that § 1029 requires not mere evidence of abstract "economic losses," but proof of "actual monetary losses." 13 F.3d 561, 563-64 (10th Cir. 1990) (quoted at DE55:5).

The government filed a response in opposition to Mr. Davis' motion for judgment of acquittal. DE59. As Mr. Davis pointed out in reply, the government's response failed "to address any of the § 1029(a)(1) cases discussed in Mr. Davis' motion." DE60:2. Instead, the government cited cases "involving wire fraud, or

bank fraud." DE60:2. In effect, the government was asking the district court to "import" the standards for wire fraud or bank fraud offenses into § 1029(a)(1) – without citing any "support in the caselaw." DE60:2.

Mr. Davis stated that wire and bank fraud statutes differ from the § 1029(a)(1) access device fraud statute. Whereas wire and bank fraud offenses have a "materiality element," access device fraud does not have such an element. DE60:3. Thus, unlike the wire and bank fraud statutes "which police the boundary between criminal and non-criminal misrepresentations by determining whether or not the misstatement was 'material' to the transaction, the cases applying § 1029(a) require showing of 'actual monetary loss' to establish the criminal 'intent to defraud.'" DE60:3.

Thus, Mr. Davis distinguished cases like *United States v. Bradley*, 644 F.3d 1213, 1240 (11th Cir. 2011), which the government cited (DE59:5) for the proposition that a person "acts with intent to defraud if he seeks to obtain, by deceptive means, something to which [he was] not entitled." DE60:3. Mr. Davis stated that such "statements about the nature of an intent to defraud must be read in the context of the fraud offenses in these cases, which required proof of materiality." DE60:3-4. "In the context of § 1029(a)(1) access device fraud, however, the proof of the element that the defendant 'acted with the intent to defraud or deceive' is not subject to proof of materiality." DE60:4. Instead, the "test" under § 1029(a)(1) is "actual monetary

losses." DE60:4.

Thus, this Court rejection, in *United States v. Waters*, 937 F.3d 1344, 1350 (11th Cir. 2019), of the defense arguments that his deceptive documents "were not material to the proposed loan agreement" did not bear on the analysis in the present case, which centered on whether there was proof of actual monetary loss. DE60:2. Similarly, this Court statement in *United States v. Watkins*, 42 F.4th 1278, 1286-87 (11th Cir. 2022) that what matters is whether a misrepresentation "goes to the very nature of the 'bargain' itself," like its statement in *United States v. Bradley*, , that an intent to defraud is simply seeking to obtain something to which one is "not entitled," 644 F.3d at 1240, were not on point in a § 1029(a)(1) prosecution. DE60:2-3.

In its opposition to Mr. Davis' motion for acquittal, the government asserted that "the landlord did not intend to grant occupancy to a fictitious person against whom he would have no recourse were rent not paid." DE59:6. But, first, as Mr. Davis pointed out in reply, this theory (which was not argued to the jury) would bear on the question of materiality, not on a "loss." DE60:4. This would be an example of possible future "economic loss" in the event rent were not paid – not proof of the kind of *actual* monetary losses that § 1029(a)(1) requires. *McNutt*, 908 F.2d at 563-64.

In the district court, the government advanced several arguments to attempt to support its view that Mr. Davis' argument on appeal would have "little merit." None

of the government's arguments are persuasive.

First, the government stated that the district court instructed the jury that to act with intent to defraud "means 'to act with intent to deceive or cheat, *usually* for personal gain or to cause financial loss to someone else.'" DE74:4 (emphasis in original) (quoting DE26:31 and Eleventh Circuit Pattern Instruction 041.1). But this argument overlooks the fact that the defense specifically requested that the jury be instructed, in accord with *United States v. Saini*, 23 F.4th 1155 (9th Cir. 2022), that an "intent to defraud . . . means . . . the intent to deprive the victim of money or property through deception." DE26:29. From the defense perspective, the district court's refusal at the prosecutor's urging (DE61:145) to give this instruction meant that the jury was *not* properly instructed. A sufficiency of the evidence argument, like the one Mr. Davis advanced in his motion for acquittal, DE55, and will advance on appeal, is evaluated based on whether a "properly instructed jury could have convicted." *United States v. Kottwitz*, 614 F.3d 1241, 1274-75 (11th Cir. 2010)[2] (citing *United States v. Mount*, 161 F.3d 675, 678 (11th Cir. 1998)).

The government notes that the jury instruction that was given -- that a defendant "usually [acts with intent to defraud when the person acts] for personal financial gain or to cause financial loss to someone else" -- accords with this Court's

---

[2] The panel decision in *Kottwitz* was withdrawn in non-pertinent part on denial of rehearing. *Kottwitz*, 627 F.3d 1383 (11th Cir. 2010).

14

Pattern Jury Instruction No. 041.1, and, on this basis, claims that this Court has "already . . . *codified* [the law] in the Pattern Criminal Jury Instructions." DE74:5 (emphasis added). But it is well-settled that this Court's Pattern Criminal Jury Instructions are not binding law. *United States v. Dohan*, 508 F.3d 989, 994 (11th Cir. 2007) ("Although generally considered a valuable resource, reflecting the collective research of a panel of distinguished judges, [pattern jury instructions] are not binding.") (citation omitted). Pattern Jury Instructions do not "codify" the law.

The government claims that this Court had held that "the word usually does not mean always." DE74:4. But the only support cited by the government for this assertion is U*nited States v. Eppolito*, 701 Fed. App'x 805, 807 (11th Cir. 2017) (unpublished). DE75:5. *Eppolito* involved § 1029(a)(1), but it is an unpublished case, which did not resolve the issue because it found that the defendant had failed to preserve it, and therefore reviewed the matter only for "plain error"; the opinion stated:

> We have noted that "[i]ntent to defraud has often been defined as 'the specific intent to deceive or cheat, for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self.'" *United States v. Klopf*, 423 F.3d 1228, 1240 (11th Cir. 2005) (emphasis added) (quoting *United States v. Peden*, 556 F.2d 278, 280 (5th Cir. 1977)). But we have not held that the intent to defraud can be shown *only* if the defendant has both the intent to deceive and the purpose of causing financial loss or receiving financial gain. As a result, any error the district court made in answering the jury's "intent to defraud" question was not plain.

701 Fed. Appx. At 807-08 (emphasis in original). Tellingly, Westlaw notes that *Eppolito* has been disagreed with by the Ninth Circuit in *United States v. Saini* – the very case upon which Mr. Davis relied in his proposed jury instructions, DE26:29, and, at trial, in his motion for judgment of acquittal. DE61:141.

In short, the jury instructions that were given in this case are not determinative of the merits of the sufficiency of the evidence challenge Mr. Davis will raise on appeal.

In its opposition to Mr. Davis' motion for bond pending appeal, the government argued, in the alternative: "Even the law [on intent to deceive in § 1029(a)(1) prosecutions] were unclear, the record undermines the Defendant's appeal." DE74:5. The government claimed: "the record does not show that there was no loss in this case, and the Defendant did not introduce evidence that he paid for the apartment he fraudulently obtained." DE74:5. This argument is woefully unavailing.

At the outset of the trial, Mr. Davis maintained that to convict him for violating § 1029(a)(1), the government had to prove that intent to defraud meant "taking property and money from somebody," and the evidence would show that no one was "out of any money or that the rent wasn't paid." DE61:42-43. When making its motion for judgment of acquittal, the defense argued the statute required "[a]n intent to deprive the victim of money or property by deception" and added that "you didn't

hear of anybody being defrauded . . . there's no money that was defrauded from anybody, no property." DE61:142. In closing argument to the jury, the defense again made this argument. DE62:34. If the defense view of the statute was correct, it was up to the government, not the defense, to introduce evidence of actual monetary loss in order to convict Mr. Davis of violating § 1029(a)(1).

As it happens, the evidence indicates that there was no monetary loss. The property manager testified that there was no eviction proceeding in this case. DE61:83. A check of $13,000, which paid rent, was introduced in evidence. DE61:139; Gov't Ex. 4.

## CONCLUSION

WHEREFORE, Appellant respectfully requests that this Court exercise its authority under Federal Rule of Appellate Procedure 9(b) to order the district court to release Mr. Davis from incarceration while the present appeal is pending, with instructions to determine the appropriate terms of bond.

Respectfully submitted,

*/s/ Zeljka Bozanic*
Zeljka Bozanic, Esq.
17100 Royal Palm Blvd., Suite 1
Weston, Florida 33326
Counsel for Appellant Davis

# RULE 32(g) CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Motion for Release complies with the applicable type-volume limitations: it contains under 4000 words.

*/s/ Zeljka Bozanic*
Zeljka Bozanic

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 6, 2024, the foregoing Motion for Release was filed using CM/ECF and thereby electronically served on all counsel of record.

*/s/ Zeljka Bozanic*
Zeljka Bozanic
Counsel of Appellant Davis
