No. 24-12274

IN THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

V.

ALFRED DAVIS,

*Defendant/ Appellant.*

On Appeal from the United States District Court
for the Southern District of Florida

APPELLANT'S INITIAL BRIEF

Zeljka Bozanic, Esq.
Attorney for Appellant Alfred Davis
17100 Royal Palm Blvd., Suite 1
Weston, Florida, 33326
Tel. (954) 920-9750

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

**United States v. Alfred Davis**
**Case No. 24-12274**

Appellant files this 11th Cir. R. 26.1 Certificate of Interested Persons:

Bailyn, Jonathan

Bozanic, Zeljka

Davis, Alfred Lenoris

Dominguez, Humberto

Galler, Brandy

Hyman, Mitchell Evan

Lacosta, Anthony W.

Lapointe, Markenzy

Lesperance, Rod

Martinez, Hon. Jose E.

Matzkin, Daniel

Sadlo, Katie L.

*/s/ Zeljka Bozanic*
Zeljka Bozanic, Esq.

C-1    of 1

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision-making process.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………ii

STATEMENT OF JURISDICTION……………………………….………....… 1

STATEMENT OF THE ISSUES………………………………………………1

STATEMENT OF THE CASE……………………………………………………2

Course of Proceedings…………………………………………………………..2

Statement of Facts…………………………………………………………    5

STANDARDS OF REVIEW………………………………………………    11

SUMMARY OF THE ARGUMENT ……………………………………….. 10

ARGUMENT ………………………………………………………………..    11

I.      The evidence was insufficient to convict Mr. Davis of access device fraud, because it did not establish that he intended to cause an actual loss – that he had the "intent to defraud." ……………………………………………    11

II.     The district court erroneously instructed the jury that acting with intent to defraud "usually" is done for personal financial gain, or to cause financial loss to someone else. ……………………………………………………    18

III.    The district court erroneously admitted evidence of Mr. Davis' 2018 application to reside at 400 Sunny Isles ………………………………22

IV.    The government failed to establish that two prior convictions were Mr. Davis' prior convictions …………………………………………..  23

CONCLUSION ...............................................................................................25

CERTIFICATE OF COMPLIANCE…………………………………………  30

CERTIFICATE OF SERVICE  …………………………………………… 30

# TABLE OF AUTHORITIES

**Cases:**

*Bond v. United States*, 572 U.S. 844 (2014) ……………………………...    15

*Hammerschmidt v. United States*, 265 U.S. 182 (1924) …………………    13

*Neder v. United States*,  527 U.S. 1 (1999) ………………………………    13-14

*United States v. Blackmon*, 839 F.2d 900 (2d Cir. 1988) ………………    16

*United States v. Bradley*, 644 F.3d 1213 (11th Cir. 2011) …………………    12

*United States v. Brady*, 13 F.3d 334 (10th Cir. 1996) ……………………...    15

*United States v. Brown*, 587 F.3d 1082 (11th Cir. 2009) …………………..    9

*United States v. Brown*, 996 F.3d 1171 (11th Cir. 2021) …………………    19-20

*United States v. Dixon*, 901 F.3d 1322 (11th Cir. 2018)……………………    9

*United States v. Dohan*, 508 F.3d 989 (11th Cir. 2007) ……………………    19

*United States v. Eppolito*, 701 Fed. Appx. 805 (11th Cir. 2017) ……………    22

*United States v. Fey*, 89 F.4th 903 (11th Cir. 2023) …………………………    23

*United States v. Feldman*, 931 F.3d 1245 (11th Cir. 2019) …………………    13

*United States v. Morris*, 81 F.3d 131 (11th Cir. 1996) ……………………...    15

*\*United States v. McNutt*, 13 F.3d 561 (10th Cir. 1990) ………………    15-16, 18

*United States v. Prather*, 205 F.3d 1265 (11th Cir. 2000) …………………    9

*United States v. Saini*, 23 F.4th 1155 (9th Cir. 2022) ………………………    3, 16

*United States v. Verdeza*, 69 F.4th 780 (11th Cir. 2023) ……………………    9

*United States v. Waters*, 937 F.3d 1344 (11th Cir. 2019) ………………….. 12-13

*United States v. Watkins*, 42 F.4th 1278 (11th Cir. 2022) …………………… 13

*United States v. Yeager*, 331 F.3d 1216 (11th Cir. 2003) ………………….. 13

**Statutes and other authorities:**

18 U.S.C. § 1029(a)(1) ……………………………………………… *passim*

18 U.S.C. § 1029(e)(1) ……………………………………………… *passim*

18 U.S.C. § 3231 ................................................................1

28 U.S.C. § 1291 …………………………………………………..1

Federal Rule of Evidence 404(b) ……………………………… 2, 6, 9, 10, 23

Eleventh Circuit Pattern Jury Instruction 041.1 ………………………… 19

Eleventh Circuit Criminal Pattern Jury Instruction 070.1 ………………… 16-17

James Wilson, Lectures on Law,
The Works of the Honourable James Wilson …………………………….. 20

# STATEMENT OF JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The court of appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which gives the courts of appeals jurisdiction over all final decisions of the district courts of the United States. The notice of appeal from the judgment of the district court entered on July 12, 2024 (DE70) was filed on July 12, 2024 (DE71).

## STATEMENT OF THE ISSUES

**Issue I**: Whether the evidence was insufficient to convict Mr. Davis of access device fraud, because there was no evidence that he defrauded anyone of any money, property, or thing of value.

**Issue II**: Whether the district court erroneously instructed the jury that, for purposes of the "intent to defraud" element of access device fraud, this intent is "usually" for personal financial gain, or to cause financial loss to someone else.

**Issue III**: Whether the district court erred in allowing evidence of a prior similar act in 2018, under Federal Rule of Evidence 404(b).

**Issue IV**: Whether the district court erred in admitting evidence of two prior convictions, when the evidence was insufficient to show that the two prior convictions were Mr. Davis' prior convictions.

## STATEMENT OF THE CASE

### Course of Proceedings and Disposition in the District Court

The single-count Indictment charged that on April 13, 2023, Mr. Davis "knowingly, and with intent to defraud, use[d] a counterfeit access device, that is, a counterfeit Florida driver's license . . . in violation of Title 18, United States Code, Section 1029(a)(1)." DE11:1. The Indictment also sought forfeiture of any property obtained as result of this offense. DE11:2.

The case proceeded to a two-day jury trial. Over defense objection, the district

court admitted evidence of Mr. Davis' prior application for occupancy, in 2018, at 400 Sunny Isles. DE61:29-30. Again over defense objection, the district court admitted in evidence two prior convictions that were purportedly Mr. Davis' two prior convictions. DE61:136.

At the conclusion of the government's case, Mr. Davis's counsel, relying on *United States v. Saini*, 23 F.4th 1155 (9th Cir. 2022), moved for a judgment of acquittal, arguing that the "intent to defraud" element of the offense "requires that a property or money is taken from somebody." DE61:141. Mr. Davis argued that the evidence did not show "anybody being defrauded," and there was no evidence that owner of Unit 2004 "was not paid rent." DE61:142. In addition, the property management company did not lose money. DE61:142-44 ("Mr. Davis did not deceive or cheat anybody out of money or property. The rent was paid.").

In response, the prosecutor argued that "the defendant gained access to an exclusive residential community, access to valet, access to mail, access to a place he could call his home. That's very, very valuable." DE61:144-45. The prosecutor added that the defendant gained access to something that he "was not entitled to." DE61:146.

During the jury charge conference, the district court denied a prosecution request that the jury be instructed that "the intent to defraud is defined as the intent to obtain something to which the defendant is not entitled," but ruled that the

prosecution could argue this to the jury. DE61:159.

In closing argument, the prosecution argued that it proved Mr. Davis' "intent to defraud or deceive":

> What did the defendant get for his lie? He got to live and be a resident and gain access to all of the amenities that the beautiful luxury condominium offers at 400 Sunny Isles, to the pool, the tennis courts, the security, all things that the defendant, Alfred Davis, wasn't entitled to in his own name because he never got approved by the condominium association to live there, because he never submitted his own information and because his own information wasn't used on that background check to approve a resident.

DE62:18. The prosecutor argued that Mr. Davis had lied about his identity because he had a criminal record. DE62:20.

In defense closing, defense counsel argued that the rent was being paid, and that "[t]here was no money that was obtained here illegally." DE62:32-34. Defense counsel countered the government's argument that the jury instruction defined access device fraud as being "usually" about money, arguing that, reading the instruction as a whole, "[e]verything is about money. They have to prove that somebody did this so they could get some money out of somebody, and [here] that's not the case." DE62:35.

In rebuttal closing, the prosecutor argued: "The intent to defraud does not – does not – require that there be a financial loss to somebody." DE62:41. The prosecutor added: "there's no evidence of rent here at all. There is no requirement

that there be a financial loss. What is required is that this defendant use an access device to obtain something to which he is not entitled, and you can look at those jury instructions and the definition of access device." DE62:42. The prosecutor added: "access to a luxury building is a thing of value. If it were not a thing of value, then why would anybody pay for it? This defendant obtained a thing of value." DE62:42.

The district court's final jury instructions included the following instruction: "To act with intent to defraud means to act with intent to deceive or cheat, usually for personal financial gain, or to cause financial loss to someone else." DE62:53-54.

The jury convicted Mr. Davis. DE48. Mr. Davis thereafter filed motions for acquittal, and for a new trial, DE55, 56, which the district court denied. DE63. After a sentencing hearing, DE80, the district court imposed a sentence of 8 months' incarceration, to be followed by three years of supervised release. DE70:2-3. The district court's judgment ordered neither forfeiture, nor restitution. DE70. Mr. Davis moved for release on bond pending appeal. DE72. The district court denied this motion. DE72. Mr. Davis thereafter moved this Court for release on bond pending appeal, which this Court denied. On September 17, 2024, this Court issued an Expedited Briefing Notice with respect to the deadlines for briefing the present appeal.

## Statement of Facts

Jeff Jean-Pierre, the assistant property manager at a condominium at 400

Sunny Isles Boulevard in Sunny Isles Beach, Florida ("400 Sunny Isles") testified that to become an occupant or resident in the condominium one has to apply to the condominium association. DE61:48-49. As part of the application process, the applicant goes through a background check which includes checking the applicant's financials, criminal history, and eviction records. DE61:49. The background check information is passed on to the board of the condominium, which is the final decisionmaker. DE61:51.

As part of the application process, the condominium association requires the applicant to provide identification, to make sure the person is the person they say they are. DE61:64.

Over defense objection that admission of this evidence violated Federal Rule of Evidence 404(b) (DE61:29), the government introduced evidence that in 2018, a person who went by the name "Rod Lesperance" dropped off an application for unit 903. DE61:65-66. The application folder included a driver's license in the name of "Rod Lesperance." DE61:71. A background check was conducted, and it found no criminal background. DE61:73.

The person going by the name Rod Lesperance subsequently applied to live in another unit, Unit 2004. DE61:75. A lease was subsequently created for this unit, which identified Cynthia Louis as the lessee. DE61:76. Cynthia Louis and Rod Lesperance were approved as occupants of this unit. DE61:78-79. The folder for

this application contained a form of identification for Cynthia Louis, and a driver's license for Rod Lesperance. DE61:79-80. A criminal background check for Rod Lesperance came back "clean." DE61:82. Jean-Pierre testified that if an applicant had provided a fraudulent ID, "we would not accept the application." DE61:83. No eviction proceedings have begun in regard to Unit 2004. DE61:83-84. The condominium association decides whether to commence eviction proceedings. DE61:84. On cross-examination, Jean-Pierre acknowledged that because Rod Lesperance did not provide a social security number, no past eviction check, or credit report, was run in 2023. DE61:93-94. Jean-Pierre did not see who dropped off the driver's license for the April 2023 application (and did not recognize the name "Al Davis"). DE61:96-97.

Jason Brown, the owner of Brown's Background Checks, testified that his company runs background checks for condominium associations. DE61:102. Brown's Background Checks does background checks for 400 Sunny Isles. DE61:107. Brown's Background Checks uses a company in California that searches the database of 30,000 courthouses in the United States. DE61:108. On April 13, 2023, Brown's Background Checks ran a background check for 400 Sunny Isles for a person named "Rod Lesperance." DE61:109. Brown opined that condominium associations receive a driver's license before running a background check to ascertain that an applicant is telling the truth. DE61:110. Brown opined that condominium

7

associations care about background checks because a person living in a "high-end building" lives on the "assumption" that others in the building "are not a danger." DE61:112.

Adam Weisenstine, a special agent with the FBI, testified that he located a check on a Navy Federal Credit Union bank account made out to Miami 2023 at 400 Sunny Isles, with a memo line stating "400 Sunny Isles, Unit 2004." DE61:123; Gov't Ex. 8. A birth certificate for Alfred Davis lists Cynthia Stuckey as his mother. DE61:127; Gov't Ex. 12. Agent Weisenstine also checked the Rod Lesperance driver's license and found that it matched it identity of a person named Aaron Lukoff. DE61:130, Gov't Exs. 3, 10. Agent Weisenstine went to 400 Sunny Isles and recognized Mr. Davis based on the photograph on the ID for Rod Lesperance. DE61:135.

Agent Weisenstine ran a criminal background check on Mr. Davis, and obtained records showing that Mr. Davis had two prior criminal convictions. DE61:136-37. Over defense objection, the record of the two prior criminal convictions were admitted in evidence. DE61:120, 136. The prior convictions were a Florida state felony conviction, and a federal conviction for bank fraud. DE61:137-38.

## STANDARDS OF REVIEW

**Issue I:** This Court reviews the sufficiency of the evidence *de novo*, viewing

the evidence in the light most favorable to the government. *United States v. Dixon*, 901 F.3d 1322, 1335 (11th Cir. 2018).

**Issue II**: This Court reviews the legal correctness of a jury instruction *de novo*. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000).

**Issues III & IV**: This Court reviews an evidentiary ruling under Federal Rule of Evidence 404(b), and on authentication, for abuse of discretion. *United States v. Verdeza*, 69 F.4th 780, 788, 790-91 (11th Cir. 2023); *United States v. Brown*, 587 F.3d 1082, 1092 (11th Cir. 2009).

## SUMMARY OF THE ARGUMENT

**Issue I:** The access device fraud statute at issue in this case, 18 U.S.C. § 1029(e)(1), defines an access device as a means "to obtain money, goods, services, or any other thing of value." At trial, Mr. Davis moved for a judgment of acquittal, arguing that the evidence was insufficient to convict him, because if, as the government claimed, he used a fake identification to apply for residence in a condominium, there was no evidence that he took any property or money from anybody – there was no evidence that the owner of the unit was not paid rent. The district court denied this motion, and allowed the case to proceed on the theory that Mr. Davis could have harbored the requisite "intent to defraud" simply because he obtained something to which he was "not entitled," namely access to a condominium unit. This ruling was erroneous. The text of the statute, and the caselaw interpreting

this statute, make clear that it is limited to frauds that seek to obtain a financial gain, or cause a monetary loss. The evidence did not establish this. The district court should have granted Mr. Davis' motion for judgment of acquittal.

**Issue II**: The defense proposed that the jury be instructed that a violation of the access device fraud statute requires proof of the defendant's intent to deprive the victim of money or property. Rejecting this proposed instruction, the district court instructed the jury that intent to defraud "usually" is for personal financial gain or to cause financial loss to someone else. The district court noted that this instruction tracked the language of this Court's Pattern Jury Instruction. But, in the context of this case, the Pattern Instruction was incorrect, because it opened the door for convicting Mr. Davis on the erroneous ground that the government argued to the jury, namely that using a fake driver's license to obtain access to a luxury condominium, and its amenities, suffices to establish access device fraud. This is not the law.

**Issue III**: The district court abused its discretion in admitting evidence of Mr. Davis' application for occupancy in 2018, five years before the conduct charged in the Indictment. This was propensity evidence, inadmissible under Federal Rule of Evidence 404(b).

**Issue IV**: The district court erred in admitting evidence of two prior convictions, because the evidence was insufficient to establish that the two prior convictions were Mr. Davis' prior convictions.

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.    The evidence was insufficient to convict Mr. Davis of access device fraud, because it did not establish that he intended to cause an actual loss – that he had the "intent to defraud."**

The jury convicted Mr. Davis of access device fraud, in violation of 18 U.S.C. § 1029(a)(1). DE62:43. This conviction should be overturned, because the evidence was insufficient to show an essential element of this offense: "intent to defraud."

At the close of the government's case, Mr. Davis moved for a judgment of acquittal, arguing that the offense of access device fraud required proof "intent to defraud." DE61:141. Mr. Davis stated that the government had failed to prove "intent to defraud," because, though it presented evidence that a fake driver's license was used to apply to sublease a condominium unit, it presented no evidence that Mr. Davis intended for another person to suffer financial or loss, or to obtain something of value. DE61:141-42. Defense counsel argued that no one was "defrauded" of money or property; the evidence showed that "[t]he rent was paid." DE61:142-44.

In response, the government argued that Mr. Davis "did obtain a thing of value," because he "gained access to an exclusive residential community, access to valet, access to mail, access to a place he could call his home. That's very, very valuable." DE61:144-45. The government added that it proved intent to defraud by showing that Mr. Davis "gained access to a place that he was not entitled to be in. That's access device fraud." DE61:145-46. The district court reserved ruling on Mr.

Davis' motion until after the jury had rendered its verdict, DE61:148; DE62:62, and ultimately denied it in a written order. DE63. Adopting the government's view, the district court stated that a person "acts with intent to defraud if he seeks to obtain, by deceptive means, something to which [he was] not entitled." DE63:2 (quoting *United States v. Bradley*, 644 F.3d 1213, 1240 (11th Cir. 2011)). Here, the district court reasoned, "Defendant lied about who he was in order to obtain something to which he was not entitled, occupancy at 400 Sunny Isles." DE63:2. This reasoning was erroneous; the reliance on *Bradley* was misplaced.

*Bradley* did not involve the access device fraud statute at issue here. It involved prosecutions for *mail and wire fraud*. 644 F.3d at 1227. The access device fraud statute at issue here is worded differently from, and requires proof of different elements than, the mail and wire fraud statutes at issue in *Bradley*.

For example, consistent with the common-law, mail and wire fraud requires proof of "a *material* misrepresentation" or the "omission or concealment of a *material* fact" – in short, a misrepresentation or omission "capable of influencing" the decision-maker. *Id*. at 1238-39 (emphasis added; citation omitted). This materiality requirement is part of what "intent to defraud" means for purposes of mail or wire fraud. But materiality is not an element of access device fraud.[1]

---

[1] In its memorandum opposing release pending appeal, the government discussed at length the opinion in *United States v. Waters*, 937 F.3d 1344 (11th Cir. 2019). Gov't Opp. 10-11. But *Waters*, like *Bradley*, involved a wire fraud – one in which there

In addition, it is a misleading oversimplification to equate wire or mail fraud with merely obtaining something to which one is "not entitled" -- without regard to whether a victim was injured. *See United States v. Feldman*, 931 F.3d 1245, 1269 (11th Cir. 2019) (Pryor, J. concurring) (noting that fraud involves an "injury," a "wrong [to] the victim "in his property rights") (citing *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)) (brackets omitted). Detrimental reliance – *i.e.*, a *loss* – is, at the very least, implicit in every fraud case. *See United States v. Yeager*, 331 F.3d 1216, 1221 (11th Cir. 2003) ("we have never clearly stated that proof that the victim reasonably relied on the misrepresentation is unnecessary"). *Neder v. United States* stated in *dicta* that "reliance" and "damages" have "no place in the federal fraud statutes." 527 U.S. 1, 24-25 (1999). But this statement was grounded in the fact that the text of the fraud statute prohibited a "'scheme to defraud,' rather

---

was no question about financial loss: the defendant "obtain[ed] a $6 million loan." *Id*. at 1346. The issue was whether the defendant's misrepresentation was "material" to the loan. *Id*. at 1357. Section 1029(a)(1) does not have a materiality element. *Waters* is inapposite here.

The government also quoted the statement in *United States v. Watkins*, 42 F.4th 1278, 1282 (11th Cir. 2022) that banks have "a clear interest in knowing to whom they are loaning money and for what purpose." Gov't Opp. 12. But *Watkins* involved wire fraud and bank fraud, for several loans of $150,000 each. *Id*. at 1281. The "clear interest" of banks in knowing the identity of the persons to whom they are lending money went to the question of materiality. *See id*. at 1286 (rejecting the defense argument that the misrepresentation made "no difference"). But such materiality questions are not part of § 1029 cases, because the statute contains no materiality element.

than the completed fraud." *Id*. The access device fraud statute at issue here, 18 U.S.C. § 1029(a)(1), does not contain the term "scheme to defraud."

Moreover, the access device fraud statute at issue here makes it unlawful to use one or more "counterfeit access devices," and defines an "access device" as an identifier that can be used "to obtain money, goods, services, or any other thing of value." 18 U.S.C. §§ 1029(a)(1) & (e)(1). Thus, for purposes of § 1029(a)(1), "intent to defraud" should be read in the context of "obtain[ing] money, goods, services or any other thing of value." The government conceded as much when opposing Mr. Davis motion for judgment of acquittal, arguing that there was sufficient evidence to convict because "[t]his defendant did obtain a thing of value. . . . [T]he defendant gained access to an exclusive residential community, access to valet, access to mail, access to a place he could call his home. That's very, very valuable." DE61:144-45. The government repeated this theory of its case in rebuttal closing argument, telling the jury: "access to a luxury building is a thing of value. If it were not a thing of value, then why would anybody pay for it? This defendant obtained a thing of value." DE62:42. The district court's jury instructions instructed the jury: "Access device is . . . identification . . . that can be used . .. to get money, goods, services, or any other thing of value." DE62:53. The instructions added: "To use includes any effort to obtain money, goods, services, or any other thing of value . . . ." DE62:53.

Thus, consistent with the text of the statute, the government's theory at trial,

reflected both in its arguments and in the jury instructions, was that it established Mr. Davis' "intent to defraud" by showing that he intended to obtain a "thing of value," namely access to a luxury residential condominium. The theory was not the theory stated by the district court post-trial, namely that Mr. Davis harbored the requisite "intent to defraud" because he sought "to obtain something to which he was not entitled." DE63:2. This latter definition of the offense strays from the text of the statute, and broadly enlarges criminal liability well beyond the statute's intent. *Cf. Bond v. United States*, 572 U.S. 844, 855 (2014) (statute criminalizing use of chemical weapons did not reach conduct of spreading chemical substance outside a romantic rival's home).

In this case, the government has cited no § 1029(a) case in which its broad definition of "intent to defraud" has been applied, by any court. For good reason: the statute is not broadly directed at persons who obtain what they're "not entitled to." Under this broad definition, a teenager who uses a fake driver's license to gain access, underage, to a bar on South Beath, would be subject to felony prosecution under § 1029, and imprisonment for up to 10 years. *See* 18 U.S.C. § 1029(c)(1)(a)(i). Rather, the statute is directed at access device frauds that cause an actual monetary loss or a personal financial gain. *See United States v. Morris*, 81 F.3d 131, 134 (11th Cir. 1996) (suggesting that the statute does not reach "free riding on a cellular phone system") (citing *United States v. Brady*, 13 F.3d 334, 340 (10th Cir. 1996)); *United*

*States v. McNutt*, 13 F.3d 561, 563-64 (10th Cir. 1990) (§ 1029 requires not mere evidence of abstract "economic losses," but proof of "actual monetary losses"); *United States v. Saini*, 23 F.4th 1155, 1157 (9th Cir. 2022) (§ 2019 requires "the intent to deprive the victim of money or property by deception"); *see also United States v. Blackmon*, 839 F.2d 900, 914 (2d Cir. 1988) (interpreting § 1029(a)(3) in light of § (e)(1)'s definition of "access device" as a means that can be used "to obtain *money, goods, services, or any other thing of value*.") (emphasis in original).

As noted above, the government argued to the jury that, for purposes of § 1029(a)(1), "access to a luxury building is a thing of value. If it were not a thing of value, then why would anybody pay for it?" DE61:42. This argument was inconsistent with what a "thing of value" means in the context of a criminal statute. For example, this Court's Pattern Jury Instruction for Hobbs Act racketeering defines "property" as follows: "'Property' includes money, other tangible *things of value*, and intangible rights *that are a source or part of income or wealth*." Eleventh Circuit Criminal Pattern Jury Instruction 070.1 (emphasis added). Thus, contrary to the government's view, Mr. Davis' status of being a lessor on a lease was not an intangible "thing of value," because it was not part of income, or wealth. To the contrary, it was a legal obligation to pay rent, which can be a source of indebtedness, but not a source of income, or wealth.

It is telling that the Indictment in this case requested, in its Forfeiture count,

that the defendant forfeit the "proceeds" of the § 1029(a)(1) offense. DE11:1-2. Plainly, the statute contemplates that an offense thereunder will generate "proceeds." But here, Mr. Davis' conduct generated no "proceeds," and the Judgment of Conviction imposed no forfeiture. DE70. Similarly, the Judgment of Conviction contained a section on "restitution." DE70:6. But the district court ordered no restitution. For good reason: there was no restitution to be imposed, because, as defense counsel pointed out in closing argument: "The rent was being paid." DE62:32.

It is also telling that in its memorandum filed in this Court in opposition to release pending appeal, the government did not even mention the statutory term "thing of value" that it had argued to the jury. The government now stated its theory differently, claiming that Mr. Davis "obtained an apartment, Unit 2004 at 400 Sunny Isles, *and all the attendant property rights*." Gov't Opp. 9 (emphasis added); Gov't Br. 15 ("Davis deceptively obtained property to which he was not entitled, Unit 2004."). So the new theory is that renting an apartment is the same thing as "obtain[ing] property" or obtaining "attendant property rights." But, again, the word "property" in § 1029(e)(1), even when stretched to encompass intangible "property rights," refers not to the rights of a lessor (which includes, of course, the *obligation* to pay rent) but to rights *that are a source or part of income or wealth*." Eleventh Circuit Criminal Pattern Jury Instruction 070.1 (emphasis added).

In its memorandum in opposition to release pending appeal, the government stated that "neither the landlord [of the specific unit] nor 400 Sunny Isles intended to grant occupancy to a fictitious person against whom they would have no recourse were rent not paid or their property damaged." Gov't Opp. 11. This argument was not supported by the evidence, nor was this the theory argued to the jury. Worse, it is not a viable § 1029 theory: since there was no evidence that Mr. Davis failed to pay his rent, this theory would be based on *possibility* that someday, he might not pay his rent (or he might damage property). This is the kind of theoretical "economic loss" that is insufficient to support a § 1029 conviction. *McNutt*, 13 F.3d at 563-64.

> **II. The district court erroneously instructed the jury that acting with intent to defraud "usually" is done for personal financial gain, or to cause financial loss to someone else.**

As the district court noted in its order denying Mr. Davis' motion for acquittal, the defense had proposed that, with regard to the "intent to defraud" element of the offense, the jury should be instructed as follows: "A person acts with intent to defraud when they have the intent to deceive and cheat, which means they have the intent to deprive the victim of money or property through deception." DE63:2 (quoting DE 26:30) (cleaned up). The district court stated that this proposed instruction "was not the law," noting that it had adopted the following instruction, consistent with the Eleventh Circuit's Pattern Jury instruction:

> To act "with intent to defraud" means to act with intent to

> deceive or cheat, usually for personal financial gain or to
> cause financial loss to someone else.

DE63:2 (quoting Eleventh Circuit Pattern Jury Instruction 041.1) (cleaned up). Mr. Davis recognizes that the instruction given by the district court was consistent with this Court's Pattern Jury Instruction. Nonetheless, in the context of the facts of this case, the instruction was erroneous.

The district court erred when it equated this Court's Pattern Jury Instructions with "the law." DE63:2. *See United States v. Dohan*, 508 F.3d 989, 994 (11th Cir. 2007) (holding that the Eleventh Circuit's Criminal Pattern Instructions are "not binding" and affirming the district court's jury instruction "which modified the pattern one.").[2]

Here, the word "usually" in this Court's Pattern Jury Instructions, adopted by the district court , incorrectly opened the door for the jury to determine the meaning and scope of the applicable law. This is not the jury's role. *See*, *e.g.*, *United States*

---

[2] This Court's website cautions that Pattern Jury Instructions are *not* the law:

> The Eleventh Circuit Judicial Council has authorized the Council's Committee on Pattern Jury Instructions to publish the following Civil and Criminal Pattern Jury Instructions provided, however, that its authorization shall not be construed as an adjudicative approval of the content of such instructions which must await case-by-case review by the Court.

https://www.ca11.uscourts.gov/pattern-jury-instructions.

*v. Brown*, 996 F.3d 1171, 1183 (11th Cir. 2021) (en banc) ("[i]t is of the greatest consequence ... that the powers of the judges and jury be kept distinct: that the judges determine the law, and that the jury determine the fact. This well-known division between their provinces has been long recognized and established.") (quoting 2 James Wilson, Lectures on Law, in The Works of the Honourable James Wilson 371 (Bird Wilson ed., Phila., Lorenzo Press 1804)).

Here, the word "usually" in the jury instructions opened the door for the prosecution and the defense to offer competing views of the scope of the law. In closing argument, the prosecutor argued as follows:

> Your jury instructions will define intent to defraud for you. It means to act with an intent to deceive or cheat. Now, that instruction will also say, *usually, that's for personal financial gain or to cause financial loss to someone, but it doesn't say that that's a requirement of that element.* Intent to deceive or cheat *also happens when a person obtains something by deceptive means, by lying, to get something that they're not entitled to*.

DE62:17-18 (emphasis added). Defense counsel's closing argument countered:

> To act with the intent to defraud means to act with intent to deceive or cheat, usually for personal financial gain, or to cause financial loss to somebody. And now the government wants to say, well, it says usually for personal financial gain. Well, let's look at the jury instruction . . . [which states:] An access device is a credit card plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other means of account access that can be used alone or in conjunction with another access device to get money, goods, services or any other So now they're going to say,

you know, we're
going to call this driver's license an access device, *even though the whole instruction talks about getting money. There was no money that was obtained here illegally. Absolutely none.*

Then it talks about what's a counterfeit access device, and it talks about . . . any effort to obtain money, goods, services, or any other thing of value, or to initiate a transfer of funds with a counterfeit access device. How do you transfer money or funds? How do you initiate a transfer of funds with this driver's license? Yes, you can go to a bank and transfer money, but that's not the case we're here for. We're here for possession of a fraudulent driver's license.

*This is not what the federal statute – the 1029(a)(1), that's what they charged him with. This is not what this is for.* The whole instruction talks about money, and it tells you, again, what I read, to act with intent to defraud means to act with intent to deceive or cheat, usually for personal financial gain or to cause financial loss to someone.

*So they want to say, well, it says usually. They want to focus on the word usually, but read the rest of the instruction. Everything is about money. They have to prove that somebody did this so they could get some money out of somebody, and that's not the case.*

DE62:33-35 (emphasis added).

Yet, closing arguments are not an occasion for the lawyers to invite the jury to decide what the law is – here, to decide whether the word "usually" meant, as the prosecutor argued, that there is no "requirement" of an intent to obtain a financial gain, or to cause a financial loss, or, alternatively, as the defense argued, that the law did contain this requirement, *i.e.* that the government "[had] to prove that somebody

did this so they could get some money out of somebody." DE62:18, 35.

The drafters of the Pattern Jury Instruction who used the word "usually" may have wanted to keep the statute broad enough to cover goods, or services, which might not technically qualify as a "financial" gain, or loss, but would nonetheless obtain or deprive someone of something of value. *Cf. United States v. Eppolito*, 701 Fed. Appx. 805, 807-08 (11th Cir. 2017) (unpublished) (noting that the jury, during deliberations, asked whether with regard to the access device fraud "intent to defraud" instruction, "asked: '[i]f the trade was for drugs vs. money was there 'personal financial gain?' Does it have to be *financial* gain or loss specifically [or] does the term cover goods or services in exchange for the stolen doc[cuments?].'") (emphasis and brackets in original). But, here, the term "usually" was unduly vague, and, in fact, misleading, because it opened the door to convicting Mr. Davis merely because, in the prosecution's words, "[h]e got to live and be a resident and gain access to all of the amenities that the beautiful luxury condominium offers at 400 Sunny Isles." DE62:18. The correct jury charge, as Mr. Davis requested, was that an intent to defraud required proof of "intent to deprive the victim of money or property through deception." DE63:2 (quoting DE26:30).

### III. The district court erroneously admitted evidence of Mr. Davis' 2018 application to reside at 400 Sunny Isles.

The Indictment charged Mr. Davis with access device fraud "[o]n or about April 13, 2023." DE11:1 The government claimed that he used a fake driver's license

to apply to be an occupant of unit 2004 at the 400 Sunny Isles condominium. DE61:38. Over defense objection, the district court permitted the government to introduce evidence, under Federal Rule of Evidence 404(b), that five years earlier, in 2018, Mr. Davis "did the exact same thing at the exact same apartment with a driver's license with the exact same name and exact same driver's license number." DE61:26, 31. This ruling was erroneous.

The district court reasoned that the 2018 incident showed Mr. Davis' "motive [and] method of operation." DE61:29. But, as defense counsel objected, the evidence was "overly prejudicial." DE61:29. Evidence that, five years earlier Mr. Davis "did the exact same thing," merely showed his propensity apply for residential occupancy with a fake driver's license. Evidence of a prior wrong in not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). *See United States v. Fey*, 89 F.4th 903, 910 (11th Cir. 2023). Here, the evidence was introduced for this prohibited purpose, as evidenced by the prosecution's claim in opening statement (drawing a defense objection, which the district court overruled) that the evidence would show that Mr. Davis "didn't just do this once. He did it twice, the exact same apartment building, once in 2018, once in 2023." DE61:34.

## IV. The government failed to establish that two prior convictions were Mr. Davis' prior convictions.

During the trial, the government introduced testimony that an FBI agent ran a

background check on Mr. Davis, which indicated that he had a prior state felony conviction as well as a prior federal felony conviction. DE61:136. To support this testimony, over defense objection, the witness relied on a Government Exhibits 15 and 13. DE61:137. But there was no fingerprint evidence linking Mr. Davis to these prior convictions. DE62:3. Exhibit 15 did not have a date of birth of the defendant. DE60:9.

At trial, the government argued that the testimony of an FBI agent about his search of the NCIC sufficed to connect Mr. Davis to the two prior convictions. DE62:6. The district court noted that it was "not convinced" by this argument, but nonetheless overruled the defense objection. DE62:7-8. This ruling was erroneous. Exhibit 15 did not have a date of birth. DE60:9. Neither exhibit had fingerprint evidence that linked Mr. Davis to the prior conviction records. In short, there was insufficient evidence to establish that Mr. Davis had two prior convictions, and the prosecution should not have been able to argue to the jury that Mr. Davis had two prior convictions, and that Mr. Davis "sought to hide" these convictions when applying for occupancy at 400 Sunny Isles. DE62:43-44.

## CONCLUSION

Appellant respectfully requests that this Court reverse his conviction.

Respectfully submitted,

*/s/ Zeljka Bozanic*
Zeljka Bozanic, Esq.
17100 Royal Palm Blvd., Suite 1
Weston, Florida 33326
Counsel for Appellant Davis

## RULE 32(g) CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Initial Brief complies with the applicable type-volume limitations: it contains under 6650 words.

*/s/ Zeljka Bozanic*
Zeljka Bozanic


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 30, 2024, the foregoing Appellant's Initial Brief was filed using CM/ECF and thereby electronically served on all counsel of record.

*/s/ Zeljka Bozanic*
Zeljka Bozanic
Counsel of Appellant Davis